IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

DAMONT EWELL,                                                                                      PLAINTIFF
ADC #109853

v.                                              5:13CV00276-JTK

WENDY KELLY, et al.                                                                             DEFENDANTS

## MEMORANDUM AND ORDER

**I.     Introduction**

Plaintiff Damont Ewell is a state inmate incarcerated at the Tucker Unit of the Arkansas Department of Correction (ADC). He filed this pro se civil rights action pursuant to 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical needs by Defendants. Defendants Kelly and Warren were dismissed on October 3, 2013, and Defendant Moore was dismissed on February 19, 2014 (Doc. Nos. 8, 33.) Plaintiff asks for monetary and injunctive relief from remaining Defendants Health Services Administrator Marie Austin and Advanced Practice Nurse Estella Bland, a/k/a Estella Murry.

Pending before the Court is the Motion for Summary Judgment filed by Defendants Austin and Bland (Doc. No. 38), to which Plaintiff filed a Response (Doc. No. 42).

**II.    Complaint**

In his Complaint, Plaintiff alleges he went to sick call on January 8, 2012, for "a ear problem, eye problem, joint, back, neck, scist (sic) on his head, hernoids (sic), script renewal and stab wounds." (Doc. No. 1, p. 5.) However, instead of seeing a doctor, Plaintiff was seen by Defendant Bland, who in the past denied Plaintiff adequate medical treatment. (Id.) Then on January 23, 2012, Plaintiff again saw Defendant Bland instead of a doctor, and did not receive adequate medical

1

treatment. (Id.) Following his complaints, Nurse Boycan checked Plaintiff's ear and agreed to talk to the doctor, but after talking with Defendant Bland, Plaintiff was refused medication. (Id., p. 6.) His medical problems continued through September, 2012, although the last time he saw Defendant Bland was in June, 2012. (Id.) Plaintiff also claims that Defendant Austin denied him adequate medical care, causing him to suffer "tremendous pains." (Id.)

## III. Summary Judgment

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998), quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

### A. Defendants' Motion

According to the medical records provided by the Defendants, Plaintiff's complaints against Defendant Bland are based on three encounters in January, 2012. On January 3, 2012, Plaintiff

complained generally of pain, and specifically of ear, back, and right arm pain. (Doc. No. 39-1, p. 4.) Plaintiff claimed he was stabbed in the arm with a pen and that he needed to see a neurologist. (Id.) Defendant Bland noted that Plaintiff's posture was erect, his gait stable, with good flexion and rotation of the back, and that he could climb the stairs without difficulty. (Id.) She did note moderate soft cerumen (wax) in his ear, and that there was a well-healed puncture-type wound on his right outer forearm, with no swelling or signs of infection. (Id.) Bland also noted that Plaintiff had active prescriptions for the following: Albuterol inhaler; Baclofed (muscle relaxer); Atenolol (blood pressure medication); Naproxen (nonsteroidal anti-inflammatory drug for pain); Acetaminophen with Codeine for pain; calcium carbonate antacid; Hydrochlorothiazide (hypertension treatment); Neomycin/Hydrocortisone/Polymyxin ear drops (combination anti-inflammatory corticosteroid and antibiotic to reduce ear swelling and discomfort); and Ranitidine (for gastrointestinal reflux). (Id., pp. 1-3). Bland directed Plaintiff to continue his medications as prescribed and provided him a script to flush his ears with warm water once a day for a week to reduce the ear wax. (Id., p. 4.) She also noted that Plaintiff did not agree with the medications and treatment plan and claimed he needed to be referred to a neurologist. (Id.)

Plaintiff was seen by a non-party nurse on January 19, 2012, for problems with his "eyes, ears, back, neck, joints, cold, stab wounds, wrist to my head, hemmorids (sic) breathing while I sleep, both L and R wrist and I need a script for a cotton blanket." (Doc. No. 39-1, p. 8.) The nurse noted that his respirations were even and that Plaintiff wanted to be seen by a provider as soon as possible. (Id.) Defendant Bland saw Plaintiff on January 23, 2012 for his complaints, and he responded, "why am I seeing you? I only see a physician. I need to add that I need some ear drops in case my ears mess up. I need a standing script to get my ears flushed out. I got shot and I am

hurting all over." (Id., p. 9.) Defendant Bland reviewed his medication and noted an erect posture, stable gait, and smooth movements, and that he climbed the stairs without difficulty and with no assistance. (Id.) She also noted a small amount of ear wax and determined that no action needed to be taken at that time, but that if Plaintiff developed ear discomforts, he should utilize the sick call process. (Id.) Bland also told him there was no medical indication for referral to a neurologist at that time. (Id.)

Plaintiff filed an "emergency" sick call request on January 25, 2012, complaining of severe pain in his left ear. (Id., p. 10.) A nurse examined him on January 27, 2012, noting drainage from his left ear and redness to inner ear painful to touch, and recommended he see a provider. (Id., p. 11.) Bland saw him again for evaluation of a complaint of left ear redness, on January 31, 2012. (Id., p. 12.) At that time, Plaintiff began shouting as he entered the sick call area, and stated, "what do I have to do to keep you from coming down here to see me? Kick your ass? I am going to stop you from coming down here. A damn APN can't do anything for me. I need to see a real doctor. You just think that you are a doctor. Keep your ass from down here. I mean this." (Id., p. 12.) Bland noted no redness to either side of Plaintiff's face, and Plaintiff was escorted from the sick call area, yelling and "inciting other inmates." (Id.)

Bland also presents the affidavit of Dr. Robert Floss, Associate Regional Medical Director for Correct Care Solutions, who states that after reviewing the records of Plaintiff's treatment by Bland, he finds that her care and treatment were appropriate and satisfactory for Plaintiff's complaints. (Doc. No. 39-3, pp. 3-4). He also states it was appropriate for her to discontinue her treatment of Plaintiff on January 31, 2012, as a "patient must be willing to cooperate with a provider in order to achieve an appropriate physical examination." (Id., p. 4.)

Based on Plaintiff's medical records and Dr. Floss's affidavit, Defendant Bland states that Plaintiff cannot provide any proof that she acted with deliberate indifference to his serious medical needs, and that negligence in diagnosing or treating a medical condition does not support an Eighth Amendment violation. Estelle v. Gamble, 429 U.S. 97, 106 (1976). Furthermore, "[i]n the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received treatment." Dulany v. Carnahan, 132 F.3d 1234, 1240 (8th Cir. 1997).

Defendant Austin also moves for dismissal, stating that Plaintiff's allegations against her are based on her supervisory position as Health Services Administrator, and on her responses to his grievances. Plaintiff admitted that Austin never treated him, and thus, his claim against her should be dismissed as based on respondeat superior liability. In addition, failure to adequately process, investigate, or respond to grievances is not actionable under 42 U.S.C. § 1983. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993).

### B.  Plaintiff's Response

Plaintiff states that his medical records are evidence that he suffered severe pain due to degenerative disc disease and that both Defendants are liable because of their prior knowledge of his pain issues and requests for adequate health care. In support of his claim that Defendant Austin knew of his allegedly inadequate medical care and treatment, he submits five grievances he submitted, some of which were responded to by Austin. (Doc. No. 42, pp. 5-14.)

### C.  Analysis

In order to support a claim for an Eighth Amendment violation, Plaintiff must prove that Defendants were deliberately indifferent to a serious medical need. Farmer v. Brennan, 511 U.S.

825, 834 (1994). However, even negligence in diagnosing or treating a medical condition does not constitute a claim of deliberate indifference. Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Rather, the "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation," Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). See also Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990) (holding that a mere disagreement with a course of medical treatment is insufficient to state a claim for relief under the Eighth Amendment). "[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996). And, personal participation in or a responsibility for the alleged unconstitutional act is required to support liability. Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir. 1990). Finally, as noted by Defendants, "[i]n the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment." Dulany, 132 F.3d at 1240.

Plaintiff fails to provide any evidence to support a deliberate indifference claim against Defendants. He admits in his deposition that his complaint against Defendant Bland is based on his three encounters with her in January, 2012, but insists that his recurring medical problems after that time are due to her failure to adequately treat him. (Doc. No. 39-2, pp. 16-18, 22-23.) The records indicate that Plaintiff received numerous prescriptions for numerous health issues, and that Defendant Bland initially treated him for excessive ear wax on January 3, 2012. (Doc. No. 39-1, p. 4.) At that time she noted that the wound to his arm was healing, with no signs of infection, and

6

that Plaintiff was mobile with good flexion and rotation of his back. (Id.) In her next encounter with Plaintiff, she saw no signs of excessive ear wax or a need for ear drops at that time (Plaintiff asked for drops "in case my ears mess up"), and no medical need for referral to a neurologist. (Id., p. 9). Finally, Plaintiff admits he was "belligerent," and did not want to see her on January 31, 2012, and it is clear to the Court that Plaintiff was angry that he was seeing her (a nurse), instead of a doctor. (Doc. No. 39-2, pp. 13-14).

Plaintiff has provided no medical evidence to prove that Defendants' actions caused his medical conditions to worsen, and he does not specifically identify which medical condition Bland failed to treat and how that caused him harm, other than to say he continued to suffer pain. Plaintiff provides no proof that Defendant Bland subjectively acted with a complete disregard for his needs. Rather, the records show that she examined him, took his vitals, and noted how he moved. As noted above, any negligence in failing to treat a condition in a particular way is not actionable, and a disagreement over how Plaintiff was treated also is not actionable. See Estate of Rosenberg v. Crandell, 56 F.3d at 37; Smith v. Marcantonio, 910 F.2d at 502.

With respect to Defendant Austin, Plaintiff claims that she was aware of Bland's treatment of him, through the grievances he filed. Even assuming this as true, this Court's determination that Bland's treatment was not unconstitutional is decisive of Plaintiff's claim against Austin. In addition, any allegation based on Austin's responses to his grievances fails to state a constitutional claim for relief. A "[prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates....it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993), quoting Azeez v. DeRobertis, 568 F.Supp. 8, 10 (N.D.Ill. 1982).

**III.     Conclusion**

IT IS, THEREFORE, ORDERED that Defendants' Motion for Summary Judgment (Doc. No. 38) be GRANTED, and that Plaintiff's claims against Defendants Austin and Bland be DISMISSED with prejudice.

An appropriate Judgment shall accompany this Memorandum and Order.

IT IS SO ORDERED this 26th day of September, 2014.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE